## Means et al. v. Commonwealth.

(Decided Oct. 2, 1936.)

E. BERTRAM for appellants.

B M. VINCENT, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At their trial in the Clinton circuit court on an indictment accusing appellants, Dick Means and Mack Covey, of the offense of chicken stealing, they were each convicted and punished by confinement in the penitentiary for a period of three years. From the verdict and judgment pronounced thereon they prosecute this appeal and urge through their counsel only one ground for reversal, which is, that the verdict is not sustained by the evidence. It is therefore insisted that the motion for a directed verdict of acquittal should have been sustained, but, if mistaken in that, then the verdict is flagrantly against the evidence. Our only task, therefore, is to determine whether or not either of those contentions is sustainable from the record.

The testimony heard at the trial establishes these undisputed facts: That Willis McDonald, a farmer in Clinton county, owned 47 hens on July 9, 1936, each of which he testified was in his chicken yard on the late afternoon of that day and went to roost in his henhouse. Sometime the following afternoon he discovered that his brood of chickens was considerably reduced, and in assembling them and counting them he learned for the first time that 32 of them were missing. Between his residence and the Kentucky and Tennessee line (Clinton county bordering on the state of Tennessee) the defendants reside in separate residences about two miles apart. After McDonald discovered the absence of his 32 chickens, he noticed some human tracks made in a plowed field between his residence and the public road, indicating that the persons who made them came from the road across the field to the residence premises of McDonald and from thence back to the road, but the plowed soil was so dry as to cause dust to fill in the tracks so that they could not be accurately measured.

Over in the state of Tennessee, Fayette Rich operated a small country store in which he carried a line of groceries and dry goods. He testified that on either Thursday or Friday morning, a little more than a week before he was on the witness stand, the defendants brought to his store in a Chevrolet automobile some chickens of the exact brood and kind lost by McDonald and that they weighed in the aggregate some fifty odd pounds, and he purchased them at fourteen cents per pound and paid defendants for them in merchandise. Upon learning of the loss of his chickens, McDonald notified some produce dealers in his vicinity and described his chickens to them and requested that they be on the lookout for their discovery. One of such dealers was George P. Taylor, at whose place of business McDonald visited and tarried there with the expectation of possibly discovering his chickens. While there, Rich drove up with a lot of chickens to sell to the Taylor produce establishment, when McDonald immediately recognized his 32 lost hens, not only from their appearance and his intimate acquaintance with them, but in the lot was a particular hen having portions of the tail feathers pulled out which he immediately recognized as one of his flock. The chickens were then taken to the residence of McDonald and turned loose in the yard, when

they immediately sought the water trough at which McDonald had provided water for them. It was late in the evening, and, after the chickens had satisfied their thirst, they directly retired to the same henhouse from which they were evidently taken and with which roosting place they showed a complete familiarity. It is concluded, therefore, that there can be no mistake whatever but that the chickens delivered to the Taylor produce establishment were McDonald's chickens.

According to the testimony of Rich, they were the same chickens, or at least part of them were, that he purchased from the defendants; and they admit having sold 12 hens to him, but stated that the number so sold was composed of 4 hens belonging to the defendants Means, and 8 to the defendant Covey. They tell weird and incredible stories with reference to the delivery of the chickens to Rich, a distant local merchant residing fifteen miles from their respective homes. Their story is, that Covey had occasion to go to the town of Jamestown, Tenn., which is located beyond the store of Rich, and that they had information that they could dispose of their chickens at one cent per pound more to him than they could procure locally in their neighborhood market. Therefore they concluded that, inasmuch as Covey was making the trip into Tennessee, the purpose of which is not disclosed, they would at the same time carry along their 12 chickens—one-third of which were owned by Means and the other two-thirds by Covey. They denied having stolen McDonald's chickens, but their cross-examination developed that they were circulating all about the neighborhood, both in the nighttime and in the daytime, with Covey's Chevrolet automobile and with no particular purpose in view. Covey had theretofore been convicted of a felony, and the sale of the chickens to Rich was the first one defendants ever made to him. The general moral reputation of both defendants was successfully attacked, and they made no effort to defend it, the same also being true with reference to Mrs. Covey, who testified as a witness for Means.

The above is a skeleton outline of the testimony heard at the trial, a more detailed statement of which would strengthen the conclusion that defendants were guilty rather than weaken it. However, the general outline of the proof that we have made is amply sufficient to sustain the verdict of conviction. In fact, no other

verdict could have been reached by the jury, except by its members totally ignoring and disregarding the undisputed facts developed by the proof heard for the commonwealth and accepting as literally true the more or less incredible story detailed by defendants. They saw proper to do neither, and we think they were completely justified in arriving at that conclusion. It therefore follows that the only ground argued for a reversal of the judgment is unavailable for that purpose.

Wherefore the judgment is affirmed.